UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MESHACH VALLADE, 02-A-0461,

      Plaintiff,

  -v-

BRIAN FISCHER, J. CONWAY,
SGT. DINO, OFFICER SCOLESE,
NURSE R. KILLINGER, DR. ABBASEY,
DR. LEKOWSKI, SANDRA PRUSAK, and
PAUL CHAPPIUS,

      Defendants.

---

12-CV-231M
ORDER



## INTRODUCTION

Plaintiff, Meshach Vallade, proceeding *pro se*, has commenced an action (Docket No.1) ("Complaint") against several employees and officials of the Attica Correctional Facility ("Attica") and the New York State Department of Corrections. (Docket No. 1). Plaintiff has moved for leave to proceed *in forma pauperis*, and has submitted a Signed Authorization (Docket No.4). The Court grants the plaintiff leave to proceed as a poor person, but for the reasons discussed below, several of plaintiff's claims must be dismissed with prejudice pursuant to 28 U.S.C. §1915(e)(2)(B) and 1915A.

## STANDARD OF REVIEW

Sections 1915(e)(2)(B) and 1915A(a) of 28 U.S.C. require the Court to conduct an initial screening of this complaint. The Court shall dismiss a complaint if the action (I) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii)

seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b); *see also Abbas v. Dixon*, 480 F.3d 636 (2d Cir. 2007).

In evaluating the complaint, the Court must accept as true all of the factual allegations and must draw all inferences in plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). "Specific facts are not necessary," and the plaintiff "need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted); *see also Boykin v. Keycorp*, 521 F.3d 202, 213 (2d Cir. 2008) (discussing pleading standard in *pro se* cases after *Twombly*). "A document filed *pro se* is to be liberally construed, ..., and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erikson*, 551 U.S. at 94 (internal quotation marks and citations omitted). Generally, the Court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal "'unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim.'" *Abbas*, 480 F.3d at 639 (quoting *Gomez v. USAA Federal Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999) (per curiam)).

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States."

2

*Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d. Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir.1994)).

## DISCUSSION

Plaintiff's four categories of claims stem from a March 30, 2009 incident in which he fell down stairs while handcuffed, sustaining a serious shoulder injury that he alleges was not promptly or adequately treated.

A. <u>Deliberate Indifference Claims Against Scolese, Doe, Conway and Fischer</u>

Plaintiff alleges that on March 30, 2009, while wearing shoes "several sizes too big for him" provided by SHU officers and handcuffed behind his back, he tripped while ascending the stairs and fell down "many" stairs, thereby sustaining injuries to his shoulder and hip (Docket No.1, pp. 7-8). Plaintiff alleges that the officers who were accompanying him, defendants Scolese and John Doe[1], were either deliberately indifferent to the risk to plaintiff's safety because they did not hold him by the arms while he was climbing the stairs, or had not been adequately trained in escorting handcuffed inmates. Plaintiff alleges that Scolese and Doe's failure to prevent him from falling resulted in bruising to his shoulder and hip as well as a diagnosis of "acromioclavicular separation" of his right shoulder, with resulting pain and discomfort.

Plaintiff further alleges that his fall resulted from the "policy or custom" maintained by Attica Superintendent Conway of handcuffing inmates held in segregation behind their backs when being transported, including ascending and descending stairs. Defendant

---

[1] While plaintiff's summary account of his Eighth Amendment claim stemming from his fall on the stairs as set forth in the "First Claim" of the form § 1983 complaint lists Sgt. Dino, as well as Officer Scolese (though not defendant John Doe) as a defendant, the narrative section of the complaint contains no allegations against Sgt. Dino with respect to plaintiff's fall and the Court thus does not treat him as a defendant to this claim.

3

DOCS Commissioner Fischer is alleged to have been aware of this custom or policy. (Docket No. 1, p. 7)

The Eighth Amendment requires prison officials "to take reasonable measures to guarantee the safety of inmates in their custody." *Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996) (internal citations omitted). "The conditions of a prisoner's confinement can give rise to an Eight Amendment violation." *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002). Deliberate indifference to an inmate's conditions of confinement falls under the prohibition of cruel and unusual punishment and is incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976) (internal quotations omitted). A section 1983 claim for deliberate indifference contains both objective and subjective prongs. *Wilson v. Seiter*, 501 U.S. 294, 298-99, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991) (alterations in original) (internal quotations omitted). Under the subjective prong, the prison officials who caused the deprivation must have acted with a sufficiently culpable state of mind, meaning a "deliberate indifference to prisoners' health or safety." *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety . . . ." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). The Eighth Amendment "is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law." *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003). The official "must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. The deliberate indifference standard is equivalent to that of recklessness as used in criminal law. *Id.* at 839-40. As such, "an ordinary lack of due care for prisoner interests or safety" is insufficient to establish liability. *Blyden*, 186 F.3d at 262.

An injury to an inmate resulting from a "'commonplace slip and fall' . . . does not rise to the level of a constitutional deprivation." *Muhammad v. Francis*, 94 Civ. 2244 (SS), 1996 U.S. Dist. LEXIS 16785, at *27 (S.D.N.Y. Nov. 13, 1996) (quoting *Davidson v. Cannon*, 474 U.S. 344, 351, 88 L. Ed. 2d 677, 106 S. Ct. 668 (1996)); *see also Krontz v. Westrick*, 3:08CV346, 2009 U.S. Dist. LEXIS 10483, at *7-8 (N.D. Ohio, Feb. 2, 2009) (collecting cases rejecting inmate slip and fall claims). Here, however, the Court finds that plaintiff's allegations that he was forced by the defendants to go up the stairs, while handcuffed and wearing shoes several sizes too big for him, may present a triable issue of fact as to whether defendants Scolese and John Doe acted with "deliberate indifference." *See Krontz*, 2009 U.S. Dist. LEXIS 10483, at *8-9 (citing cases in which requiring inmates with "obvious impairments" to descend stairs stated a claim for deliberate indifference). Plaintiff's deliberate indifference claims against defendants Scolese and John Doe[2] may therefore proceed.

---

[2] The caption on the form complaint does not list Officer John Doe as a defendant. However, inasmuch as Doe is listed as a defendant on a second caption preceding plaintiff's statement of his claims (Docket No.1, p. 5), which includes allegations against Doe, the Court regards him as a defendant to the action and will instruct the Clerk of the Court to change the caption accordingly. Pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d. Cir. 1997)(per curiam), the Court will request that the New York State Attorney General's Office, Buffalo Region, which in all likelihood will appear for defendants herein once served, attempt to ascertain the full name of Correctional Officer John Doe. The Attorney General's Office is also requested to provide the address where the defendant can currently be served. The Attorney General's Office need not undertake to defend or indemnify this defendant at this juncture. This order merely provides a means by which plaintiff may name and properly serve the defendant as instructed by the Second Circuit in *Valentin*.

The complaint does not allege that defendants Superintendent Conway and Commissioner Fischer had any direct involvement with plaintiff's fall. "It is well settled in this Circuit that personal involvement of a defendant in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). While "*respondeat superior* cannot form the basis for a § 1983 claim," *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998), the personal involvement of a supervisory defendant in a § 1983 claim may be shown in one or more of the following ways: "(1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (quoting *Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir.2003)); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995). Plaintiff does not allege that Conway and Fischer had any direct involvement in his fall, or had knowledge of the circumstances causing or contributing to the accident (*i.e.*, the fact that his shoes were several sizes too large for him, causing him to trip). While plaintiff filed a grievance with respect to the incident, which was denied by the Superintendent, plaintiff's claim against Conway is not based upon any alleged failure to remedy the wrong.

Plaintiff instead alleges, as the basis for his claims against Conway and Fischer, that Conway "had in place an inadequate policy and or custom to handcuff inmates behind their

backs while going up and down...stairs " if the inmate is held in segregation, and that Fischer was aware of this policy (Docket No.1, p.7). In effect, plaintiff is asking the Court to find that handcuffing inmates while they are being transported within a correctional facility constitutes deliberate indifference. It is well-established that handcuffing an inmate is a regular incident of prison life which does not *per se* violate the Eighth Amendment. *See Graham v. Fries*, 93-CV-3371 (JG), 1996 U.S. Dist. LEXIS 22735, at *32-33 (E.D.N.Y. Oct. 16, 1996) ("[T]he use of shackles and handcuffs (whether in front or in back) while moving prisoners does not constitute an extreme deprivation [under the Eighth Amendment]. . . . Handcuffing a prisoner behind his back rather than in front of his body and placing shackles on his ankles does not deprive a prisoner of a life necessity. It was a regular incident of prison life and a common security measure imposed at the Riverhead jail"). Plaintiff's allegations that the "policy" maintained by Superintendent Conway of handcuffing prisoners while moving them about a correctional facility creates an excessive risk to inmate safety thus fails to state a claim and must be dismissed. To be sure, the circumstances surrounding the use of handcuffs may, in particular instances, give rise to an Eighth Amendment claim. *See, e.g., Kerman v. City of New York*, 261 F.3d 229, 239-40 (2d Cir. 2001) (overly tight handcuffing can constitute excessive force); *Davis v. Fischer*, 09-CV-6084 CJS, 2012 U.S. Dist. LEXIS 6778, at *32 (W.D.N.Y. Jan. 20, 2012) ("The malicious or sadistic application of handcuffs may constitute an Eighth Amendment violation.").

And as explained above, the Court is allowing plaintiff's Eighth Amendment claims against defendants Scolese and John Doe to go forward, in light of plaintiff's allegation that it was unsafe for him to have been required to ascend the stairs in handcuffs while he was

wearing shoes several sizes too big for him, and that Scolese and Doe should have been aware of the danger to him while they were transporting him. Plaintiff does not, however, allege that defendant Conway had adopted a policy pursuant to which corrections officers would disregard and not reduce or eliminate threats to inmate safety resulting from the circumstances present at the time they were being transported in handcuffs.

Moreover, while plaintiff alleges that defendants Scolese and Doe were not adequately trained in escorting handcuffed inmates on the stairs, and infers that this failure was attributable to defendant Conway, mere conclusory allegations that a supervisory defendant failed to properly supervise or train prison personnel are insufficient to state a constitutional claim. *Rheaume v. Tallon*, 1:07-CV-262, 2009 U.S. Dist. LEXIS 127768, at *9 (D. Vt. Jan. 5, 2009) (inmate's claim that prison supervisory personnel "failed to train subordinates on how to properly escort shackled prisoners down the stairs", failed to state an Eighth Amendment claim where he alleged no facts in support of the claim).

Accordingly, plaintiff's Eighth Amendment claims against defendants Conway and Fischer must be dismissed.

B. <u>Denial of Medical Care Claims Against Dr. Rao[3], Dr. Abbasey, Dr. Lekowski and Nurse Killinger</u>

Plaintiff alleges that after the March 30 incident, he put in numerous sick calls, complaining of pain, and wrote "numerous" grievances and letters in that regard. He alleges that he wrote defendants Dr. Abbasey and Nurse Administrator Killinger "begging

---

[3] The caption on plaintiff's form complaint does not list Dr. Rao as a defendant. However, inasmuch as Rao is listed as a defendant on a second caption preceding plaintiff's statement of his claims (Docket No.1, p. 5), which includes the claim against Rao discussed herein, the Court will treat him as a defendant to this action. Because the Court is dismissing plaintiff's claim against Dr. Rao, as discussed *infra*, the Court will not direct the Clerk of the Court to add and then terminate Dr. Rao as a defendant in this action.

for medical attention," but that he wasn't taken to see an outside doctor/specialist for approximately five weeks or until May 5, 2009 when a Dr. Riggio of Wyoming Valley Radiologists diagnosed "acromioclavicular separation" of plaintiff's right shoulder. (Docket No. 1, p.8). Plaintiff alleges that he wrote defendants Drs. Lekowski[4] and Rao "several letters complaining of pain and the medication not working but these Drs. didn't take him seriously and refused to have him treated by a specialist." (Id., p. 9). Plaintiff concedes that he was prescribed "numerous medications" to treat the pain, and was given a sling for his shoulder as well, but states that the medications were inadequate for the injury he had sustained. (Id.).

The allegations set forth in grievances attached to plaintiff's complaint provide some additional detail concerning his medical treatment claims, and virtually all relate to defendant Dr. Lekowski. Plaintiff's grievance dated April 27, 2009 states that on April 8, 2009, or eight days after the fall on the stairs, he met with Dr. Lekowski, but "all he did was put me in to get a (MRI)" while failing to prescribe a pain medication. (Docket No.1, p. 36). A grievance filed by plaintiff on May 15, 2009 states that on May 14, 2009, Dr. Lekowski came to see him in his cell concerning his medical complaints and brought him to an examination room, where he proceeded to examine plaintiff by having him move his injured body parts in "a certain way." At the conclusion of the exam, Dr. Lekowski indicated he would have to "check something" and would be back to see plaintiff, but never returned. The May 15 grievance further alleges that every time that plaintiff brought his medical

---

[4] The complaint sometimes spells the defendant physician's name as "Lekowski" and sometimes "Laskowski." Inasmuch as the caption of the complaint and identification of the defendants which follows spells the defendant's name as "Lekowski," that will be the spelling used by the Court herein.

complaints to Lekowski's attention, "he disregard[ed] them and act[ed] like he never heard about the problems before." (Docket No.1, p. 37). Plaintiff alleges that he met with Dr. Lekowski "three times in less than two months," but he did not help him with his medical complaints, though plaintiff further states that defendant prescribed him Naproxen for his pain, which he stopped taking because of its side effects. (*Id.*). Plaintiff further states that after complaining about his right shoulder and right hip bone, an x-ray was taken of his shoulders, which a nurse told him was "negative." (*Id.*). A grievance filed by plaintiff on June 8, 2009 alleges that Dr. Lekowski had come to his cell on that date, "acting very unprofessional with a wicked smirk on his face." Plaintiff produced a diagnostic testing notification defendant had sent him regarding follow-up x-rays. The grievance further states that when he told Lekowski that he wanted him to take his medical problems more seriously, Lekowski walked away without informing him of the results of the May 22 x-rays. (*Id.*, p. 39).

To establish a violation of the Eighth Amendment arising out of inadequate medical treatment, plaintiff must prove that defendants acted with "deliberate indifference to [his] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). The "deliberate indifference" standard consists of both objective and subjective components. *Hathaway v. Coughlin*, 37 F. 3d 63, 66 (2d Cir. 1994), *cert. denied*, 513 U.S. 1154, 115 S. Ct. 1108, 130 L. Ed. 2d 1074 (1995). Under the objective component, the alleged medical need must be "sufficiently serious." *Id*. A "sufficiently serious" medical need is "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Id*. "Factors that have been considered include the

existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F. 3d 698, 702 (2d Cir. 1998). To satisfy the subjective component, plaintiff must show that the defendant officials acted with a "sufficiently culpable state of mind" in depriving him of adequate medical treatment. *Hathaway v. Coughlin*, 99 F. 3d 550, 553 (2d Cir. 1996). "The subjective element of deliberate indifference 'entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Id*; *see also Hernandez v. Keane*, 341 F. 3d 137, 144 (2d Cir. 2003), *cert. denied*, 543 U.S. 1093, 125 S. Ct. 971, 160 L. Ed. 2d 905 (2005) (likening the necessary state of mind to "the equivalent of criminal recklessness"). In order to be found "sufficiently culpable," the official must "know [ ] of and disregard[ ] an excessive risk to inmate health or safety; [he] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

Mere negligence, or even medical malpractice, is not actionable. "A [prisoner's] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. Rather, the plaintiff must allege conduct that is "repugnant to the conscience of mankind," *id*. at 102, or "incompatible with the evolving

11

standards of decency that mark the progress of a maturing society," *id.* at 105-06, 106 n. 14; *Chance*, 143 F.3d 698 at 703-04; *Ross*, 784 F.Supp. 35 at 44. Likewise, an inmate's "mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d 698 at 703. *See also Reyes v. Ellen Gardener*, 93 Fed. Appx. 283, 285 (2d Cir. 2004). "Thus, 'a delay in treatment based on a bad diagnosis or erroneous calculus of risks and costs, or a mistaken decision not to treat based on an erroneous view that the condition is benign or trivial or hopeless, or that treatment is unreliable, or that the cure is as risky or painful or bad as the malady' will not constitute deliberate indifference." *Sanchez v. Wright*, 09-CV-469S(Sr), 2012 U.S. Dist. LEXIS 20474, at *17 (W.D.N.Y. Feb. 17, 2012) (citing *Harrison v. Barkley*, 219 F.3d 132, 139 (2d Cir. 2000)).

Giving *pro se* plaintiff's allegations the liberal construction they must be afforded, the Court finds that the complaint fails to state Eighth Amendment medical treatment claims against defendants Drs. Rao and Abbasey and Nurse Administrator Killinger. With respect to Dr. Abbasey and Nurse Killinger, the complaint alleges only that plaintiff wrote to them requesting medical attention but that it took them five weeks to "get him seen" by an outside specialist. Given plaintiff's admission that he did receive treatment for his injuries–in the form of x-rays, pain relief medication and a shoulder sling–and that he was in fact referred to and seen by an outside specialist, his allegations against defendants Abbasey and Killinger amount at most to plaintiff's disagreement with the treatment received, or a delay in treatment, *i.e.* the delay in referring him to an outside specialist. As

indicated in the cases discussed above, such allegations do not, without more, give rise to a claim of deliberate indifference within the meaning of the Eighth Amendment. The Court likewise determines that plaintiff's allegation that he wrote several letters to Dr. Rao complaining of pain and the medication not working, but that Rao "didn't take him seriously" and refused to have him treated by a specialist, fails to give rise to a deliberate indifference claim, in view of plaintiff's admission that he *was,* after a delay, referred to an outside specialist.

With respect to Dr. Lekowski, however, the Court finds that plaintiff's allegations, when considered with the statements set forth in the grievances attached to the complaint and chronicled above, are sufficient to allow his medical treatment claim against Lekowski to proceed at this juncture.

C. <u>Access to the Courts Claims Against Prusak and Chappius</u>

Plaintiff, after the March 30 incident, wrote defendant Paul Chappius, Deputy Superintendent for Security at Attica, and Sandra Prusak, who is in charge of Inmate Records, about purchasing a copy of the video of the fall on the stairs a day after it occurred, apparently intending to use the video in connection with his grievance concerning the fall. His request was denied, and plaintiff alleges that he was told that the videos did not exist. Plaintiff claims that this is a lie because the tapes are required to be held for a certain amount of time before being destroyed or taped over. (Docket No. 1, p. 9).

The Court construes plaintiff's allegations with respect to the videotape as asserting a claim of denial of access to the courts. *See Modlenaar v. C.O. Liberatore*, 07-CV-6012, 2009 U.S. Dist. LEXIS 62842, at *11 (W.D.N.Y. July 22, 2009) (construing alleged failure by prison official to preserve videotape as attempting to plead claim for denial of access

13

to the courts) (citing *Washington v. James*, 782 F.2d 1134 (2d Cir. 1986)). As so construed, plaintiff's claim may proceed against both defendants.[5]

D. <u>Retaliation Claim Against Sgt. Dino</u>

Plaintiff claims that on or about April 3, 2009, defendant Sgt. Dino, who was in charge of defendants Scolese and Doe on the date of plaintiff's fall, came to plaintiff's cell "harassing him and threatening him with bodily harm for writing grievances and letters to get a copy of the videotape where the fall happened." (Docket No. 1, p. 10). Plaintiff further alleges that he then wrote grievances against Dino, which led to his being denied food and recreation, and fear of "getting beat up," though he does not allege that he was in fact physically abused. Plaintiff, who states that he is "on mental health case load for psychiatric issues," alleges that this harassment by Sgt. Dino made him depressed and "hampered his ability to function normally." (*Id.*). Plaintiff claims that defendant Dino's action amount to retaliation in violation of the First Amendment. (*Id.*, pp. 10-11).

To state a First Amendment retaliation claim, plaintiff must show, "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S. Ct. 992,

---

[5]While the Court is allowing plaintiff's access to the courts claim to proceed against defendants Chappius and Prusak based upon his allegation that his request for the video was denied, and he was told (falsely) that the tape did not exist, the Court notes that the Grievance Determination issued on June 24, 2009 (Docket No. 1, p. 21) advised plaintiff that he could file a Freedom of Information Law Request (FOIL) to obtain the video footage he was requesting. If defendants had previously so advised plaintiff, and if the requested video did exist, plaintiff's allegations would fail to state a denial of access claim against the defendants. *See Modlenaar*, 2009 U.S. Dist. LEXIS 62842, at *11, n. 4 (complaint did not state a denial of access claim against defendant superintendent who had not denied plaintiff's request for videotape, but had instead informed plaintiff that he could obtain a copy through an FOIA request).

14

152 L. Ed. 2d 1 (2002). Verbal threats can amount to an adverse action that may be redressable under the First Amendment. *See, e.g., Hofelich v. Ercole*, 06 Civ. 13697 (PKC), 2010 U.S. Dist. LEXIS 3039, at *27 (S.D.N.Y. Jan. 11, 2010) (citation omitted). However, whether verbals threats sufficiently constitute adverse action may "depend on their specificity and the context in which they are uttered." *Id.*, at *28 (quoting *Lunney v. Brureton*, 04 Civ. 2438 (LAK)(GWG), 2007 U.S. Dist. LEXIS 38660 (S.D.N.Y. May 25, 2007)) (Report and Recommendation). In the instant matter, the defendant's threat of bodily harm alone would likely not rise to the level of an adverse action, *see, e.g., Kemp v. LeClaire*, 03-CV-8445, 2007 U.S. Dist. LEXIS 21342, at *4, 19-20 (W.D.N.Y. Mar. 12, 2007) (threats such as "your day is coming," "you'll be sent to your mother in a black box," and "you'll get your black ass kicked" were not sufficient to sustain a First Amendment claim). However, coupled with plaintiff's claim that other adverse action followed the threat (*i.e.*, denial of food and recreation) and plaintiff's allegation that he has psychiatric issues and thus is more susceptible to anxiety, the Court finds that his retaliation claim against defendant Dino may go forward.

## CONCLUSION

Because plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization with respect to the filing fee, his request to proceed *in forma pauperis* is hereby granted. For the reasons discussed above, plaintiff's deliberate indifference claims against defendants Superintendent Conway and Commissioner Fischer, and his medical care claims with respect to defendants Drs. Rao and Abbasey and Nurse Killinger are dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A. As all

15

the claims asserted against defendants Conway, Fischer, Rao, Abbasey and Killinger are being dismissed, the Clerk of the Court will be instructed to terminate Conway, Fischer, Abbasey and Killinger as parties to this proceeding.[6] The U.S. Marshal will be directed to serve the summons and complaint on defendants Scolese, Lekowski, Chappius, Prusak, and Dino regarding the claims which will go forward.

The New York State Attorney General's Office is hereby requested to produce the information specified above, see n. 2, supra, regarding the identity of defendant Correctional Officer John Doe by **October 15, 2012**. Once this information is provided, plaintiff's complaint shall be deemed amended to reflect the full names of the defendant, a summons shall be issued, and the Court will direct service on this defendant.

## ORDER

IT HEREBY IS ORDERED, that plaintiff's request to proceed in forma pauperis is granted;

FURTHER, that the Clerk of the Court is directed to add Officer John Doe as a defendant in this action;

FURTHER, that the deliberate indifference claims against J. Conway and Brian Fisher and the denial of medical care claims against defendants Dr. Rao, Dr. Abbasey, and Nurse Killinger are dismissed with prejudice;

---

[6]As noted in n. 3, supra, Dr. Rao was not named in the caption of plaintiff's complaint as a defendant in this action. However, inasmuch as the body of the complaint asserted a claim against Dr. Rao, the Court has treated him as a defendant. The claim against Dr. Rao having been dismissed, it is not necessary for the Clerk of the Court to add him, and then immediately terminate him, as a defendant to this action.

FURTHER, that the Clerk of the Court is directed to terminate J. Conway, Brian Fischer, Dr. Abbasey, and Nurse R. Killinger as parties to this action;

FURTHER, that the Clerk of the Court is directed to file plaintiff's papers, and to cause the United States Marshal to serve copies of the Summons, Complaint, and this Order upon defendants Scolese, Lekowski, Chappius, Prusak, and Dino without plaintiff's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in plaintiff's favor;

FURTHER, the Clerk of the Court is directed to forward a copy of this Order to the Assistant Attorney General in Charge, New York State Attorney General's Office, Main Place Tower, 350 Main Street, Suite 300A, Buffalo, New York 14202, and the Attorney General's Office is requested to attempt to ascertain the identity of the John Doe Correctional Officer defendant and the address at which he can be served, and provide said information to the Court's Pro Se Office by **October 15, 2012**;

FURTHER, that pursuant to 42 U.S.C. § 1997e(g)(2), the defendants are directed to respond to the complaint.

SO ORDERED.

DATED: 9/13, 2012
Buffalo, New York

_____
JOHN T. CURTIN
United States District Judge

17